

FILED
MAY 18 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RASHAD AL-RASHEED,

        Plaintiff,

v.                                  CIVIL ACTION NO. 2:20-cv-201

DBI SERVICES, LLC.,

        Defendant.

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant DBI Services LLC's ("DBI" or "Defendant") Motion for Judgment on the Pleadings pursuant to the Federal Rules of Civil Procedure ("FRCP") Rules 12(c) and 12(h)(2)(B). ECF No. 16. For the reasons set forth herein, Defendant's Motion for Judgment on the Pleadings is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

The Court adopts its Factual and Procedural History as stated in its November 18, 2020 Memorandum Opinion and Order (the "12(b)(6) Order") dismissing Counts IV, V, and VI of the Complaint. ECF No. 13. Many of those facts are restated herein along with subsequent procedural history.

Plaintiff Rashad Al-Rasheed's ("Plaintiff") claims arise from incidents that occurred during his employment with Defendant. *See* ECF No. 6. From June 2016 until January 11, 2017, Plaintiff worked as a diesel mechanic for TME Enterprises, Inc. ("TME"). *Id.* at ¶ 7. Thereafter, DBI acquired TME and employed Plaintiff until June 2019. *Id.* at ¶¶ 8, 27. In June 2019, Plaintiff, a Muslim, Iraqi-born resident of Virginia, resigned his employment. *Id.* at ¶ 27. Plaintiff claims constructive discharge after allegedly suffering intolerable working conditions

1

created by DBI's pervasive harassment based on his race, religion, and national origin. *Id.* at ¶ 31.

On May 30, 2019, Plaintiff settled a workers' compensation claim for injuries sustained as a result of his employment with DBI. *Id.* at ¶ 27; ECF No. 16-2. Upon further negotiations with Defendant, Plaintiff ultimately agreed to resign. *Id.* Plaintiff states that his resignation was voluntary and given "in order to forego continued harassment, disrespect and mistreatment based on his race, religion and national origin." *Id.* Plaintiff further alleges that DBI constructively discharged him by creating an environment of harassment and discrimination that made his working conditions intolerable. *Id.* at ¶ 31.

On June 18, 2019, Plaintiff signed a Separation and Release Agreement (the "Release Agreement") with Defendant, agreeing to "discharge and forever release [Defendant]… from any and all liabilities, claims, demand, causes of action or expenses… arising out of my employment with [Defendant]." ECF No. 16-1; Compl. ¶ 29-30. This Release Agreement was expressly conditioned upon the Virginia Workers' Compensation Commission's approval of the workers' compensation settlement documents. *Id.* A month after Plaintiff signed the Release Agreement, the Virginia Workers' Compensation Commission approved Defendant's workers' compensation settlement in the amount of $45,000 on July 19, 2019 (the "VWCC Order"), thereby activating the Release Agreement. ECF No. 16-2.

Prior to final disposition of the workers' compensation settlement, Plaintiff filed a charge of discrimination with the EEOC on July 5, 2019. *Id.* at ¶ 32. On January 21, 2020, the EEOC, unable to resolve his claim, mailed a right-to-sue letter which he received on January 24, 2020. *Id.* at ¶ 6.

Plaintiff filed his original complaint on April 22, 2020, and subsequently filed an Amended Complaint ("Complaint") on June 9, 2020. ECF Nos. 1, 6. Defendant then filed a Motion to Dismiss on June 23, 2020. ECF No. 9. The Motion to Dismiss was fully briefed and the Court ultimately granted in part and denied in part Defendant's motion, thereby dismissing Counts IV, V, and VI of the Complaint. Soon after, Defendant filed its Answer to the Complaint which included two counterclaims for Breach of Contract (Counterclaim I) and Breach of the Duty of Good Faith and Fair Dealing (Counterclaim II). ECF No. 14.

Presently, Counts I, II, and III of Plaintiff's Complaint and Counterclaims I and II of Defendant's Answer remain at issue. On February 17, 2021, Defendant filed its Motion for Judgment on the Pleadings. ECF No. 16. Plaintiff filed a Memorandum in Opposition on March 3, 2017. ECF No. 17. Defendant subsequently filed its Reply on March 9, 2021. ECF No. 19. As such, this matter is ripe for disposition.

## II. LEGAL STANDARD

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion (or Rule 12(c) motion), courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or

3

arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions ... without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### III. DISCUSSION

**A. The Release Agreement and VWCC Order may be considered by the Court.**

At issue is whether the Complaint, along with its exhibits and all documents incorporated by reference, pleads sufficient facts to state a plausible claim for relief. Defendant believes the Complaint is insufficient and relies upon the Release Agreement (ECF No. 16-1) and the VWCC Order (ECF No. 16-2) in support of an absolute defense to Plaintiff's allegations. *See* ECF Nos. 14 and 16. Specifically, Defendant argues that Plaintiff released any and all claims against Defendant once the Release Agreement came into effect. According to the Release Agreement, its terms became effective upon the Virginia Workers' Compensation Commission's approval of

Plaintiff's separate workers' compensation settlement. Ultimately, the VWCC Order was signed on July 19, 2019, thereby releasing Defendant of "any and all liabilities, claims, demand, causes of action or expenses." ECF No. 16-1.

Ordinarily, courts must only rely upon the allegations set forth in, and attached to, the complaint when adjudicating a Rule 12 motion. *See Simons*, 762 F.2d at 31. But a court can also take into consideration documents attached to a motion to dismiss, as long as they are integral to the complaint and authentic. *See Blankenship v. Manchin*, 471 F.3d 523, 526 (4th Cir. 2006); *see also Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). The Release Agreement and VWCC Order were not attached to Plaintiff's Complaint; however, these documents were referenced in the following Complaint paragraphs:

> 29. [...]. DBI has purported to have a signed agreement from Al-Rasheed waiving all claims relating to his employment with DBI. DBI has never provided any requisite consideration for these alleged additional waivers. Accordingly, any such agreements are void and invalid.
>
> 30. Al-Rasheed's understanding was merely that he was settling his worker's compensation claim as part of his agreement to settle and resign employment.

Compl. ¶ 29-30. Evident in these paragraphs, Plaintiff refers to Defendant's "signed agreement" (the Release Agreement) but argues that this agreement is "void and invalid." *Id.* While the validity of the agreement is a legal question that the Court will address below, the existence of such agreement is a fact that is incorporated by reference in Plaintiff's Complaint. Moreover, this Court previously held that "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005) (*quoting Gasner v. County Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (internal quotations omitted). It would

follow that any document containing an alleged release of all claims, including the claims set forth in Plaintiff's Complaint, is a sufficiently pertinent document warranting incorporation through Defendant's Motion for Judgment. After all, if it were that case that plaintiffs could bypass Rule 12 motions by simply failing to attach potentially dispositive documents to their complaints – whether intentional or otherwise – such a tactic would give way to a gross miscarriage of justice. Accordingly, the Court will consider the Release Agreement and the VWCC Order in its analysis.

**B. The Release Agreement and VWCC Order as applied to Plaintiff's allegations.**

In its 12(b)(6) Order, the Court held that the substance of Plaintiff's remaining claims pass muster for judgment at the pleadings stage. *See* ECF No. 13 (where the Court analyzed Counts I, II, and III and determined there were sufficient facts to allege a plausible claim under Rules 12(b)(1) and 12(b)(6)). But Plaintiff's ability to assert these claims could be precluded by way of a valid contractual release. It is well settled under Virginia law that "[i]f the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract." Va. Code Ann. § 8.01-576.11.

"A valid settlement must be the product of a mutual agreement between the parties. To find a settlement agreement enforceable, a court must determine that there are sufficient facts to resolve any disputes over material terms, and must find that all material agreed-upon terms are sufficiently definite to enable the court to give them an exact meaning." *Intersections, Inc. v. Loomis*, 2010 U.S. Dist. LEXIS 118080 at *6-7 (E.D.Va. Nov. 3, 2010) (*citing Hensley v. Alcon Labs., Inc.*, 277 F.3d 535 (4th Cir. 2002); *Silicon Image Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840 (E.D. Va. 2003); *Mayer Smith v. Farrell*, 199 Va. 121, 98 S.E.2d 3 (1957)). Concerning the Release Agreement, the parties agree that both Plaintiff and Defendant signed the

6

document on June 18, 2019. See ECF No. 16-1. Accordingly, the Court has no reason to doubt that the parties' signatures indicate mutual assent to the terms therein. The Release Agreement is a one-page document clearly stating that Plaintiff waives, discharges, and forever releases Defendant from any and all claims including those asserted under Title VII of the Civil Rights Act of 1964 (i.e. Counts I, II, and III). The agreement has an effective date of the date on which the Virginia Workers' Compensation Commission approved Plaintiff's workers' compensation settlement. That date was July 19, 2019 pursuant to the VWCC Order. ECF No. 16-2. Moreover, the Release Agreement states that Plaintiff "expressly agree[s] and acknowledge[s] that this resignation, release, and waiver of rights is completely voluntary and is given of my own free will without any influence of threat or coercion." *Id.* In exchange for signing the agreement, Defendant was to pay $100 to Plaintiff. *Id.* The Court finds that the terms of this agreement underscore valid contractual obligations. Therefore, the only way that Plaintiff's claims can survive dismissal is if the Court determines that the Release Agreement has been rescinded or otherwise invalid.

In furtherance of Plaintiff's assertion that the waiver is "void and invalid," Plaintiff argues that he was never paid the $100 bargained-for consideration explicitly required by the Release Agreement. Compl. ¶ 29. Plaintiff further states that the consideration was "insufficient under any reasonable analysis," and that the "boilerplate agreement" was "written in small font with crammed formatting" and "was not personalized to Plaintiff in any meaningful way." *Id.* In effect, Plaintiff asks the Court to invalidate or rescind what is otherwise a valid contractual agreement based upon failure to pay consideration, inadequate consideration, and boilerplate language.

Oddly, Plaintiff's failure to pay consideration argument reflects a breach of contract claim rather than an argument negating the validity of a contract in the first place. But this is because instead of enforcing the terms of the agreement, Plaintiff desires to rescind it altogether. Under Virginia jurisprudence, the remedy of equitable rescission "is only available when the underlying breach of contract is 'substantial' or 'material.'" *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 469 (2020) (*quoting Bolling v. King Coal Theatres, Inc.*, 185 Va. 991, 996, 41 S.E.2d 59 (1947) ("Ordinarily, rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract, or where the remedy at law is plain, adequate and complete."). This Court has previously held that "[a] substantial, although it may not be a total, failure of consideration may entitle a party to rescind the contract." *Hitachi Credit Am. Corp. v. Signet Bank*, 1996 U.S. Dist. LEXIS 21849 at *22 (E.D. Va. Dec. 3, 1996 ) (*citing Marriott v. Harris*, 235 Va. 199, 214 (1988)). Here, Plaintiff alleges that he never obtained the $100 consideration which was explicitly required by the Release Agreement. Arguably, Defendant even concedes to this point. *See* ECF No. 16 ("The only relevant factual allegation is that Plaintiff did not receive the $100 payment."). Whether the $100 payment is material or substantial enough to warrant rescission is a determination that is improper at the pleadings stage. Only through discovery can the Court determine whether the $100 was actually paid and whether there is any admissible parole evidence that might impact the materiality of the $100 consideration.

Moreover, Plaintiff's remaining arguments— the adequacy of consideration and boilerplate language arguments— will require detailed factual scenarios that remain to be seen. *See Moore v. Gregory*, 146 Va. 504 (1925) ("[a] contract or conveyance which is improvident, or based on an inadequate consideration, will not be set aside for those reasons alone, unless, as the

rule is generally stated, the improvidence or inadequacy is so great as to furnish of itself convincing evidence of fraud."). Despite Plaintiff's high burden to prove invalidity or rescission, the Court must rely upon the pleadings, in the light most favorable to Plaintiff, in determining whether Plaintiff's allegations are plausible. It is certainly plausible that upon discovery, Plaintiff can uncover some set of facts to support recission of the Release Agreement or otherwise invalidate the contract. Accordingly, Defendant's Motion for Judgment is **DENIED**.

### C. Defendant's Counterclaims

Because it is plausible for Plaintiff to uncover a factual scenario that invalidates the Release Agreement, Defendant's counterclaims will also require additional discovery prior to adjudication. Therefore, for the same reasons articulated in Section III.A and III.B above, Defendant's Motion for Judgment on its counterclaims is also **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment is **DENIED**. The Court **DIRECTS** the Clerk to provide a copy of this Order to the Parties.

**IT IS SO ORDERED**.

Newport News, Virginia
May 17, 2021

Raymond A. Jackson
United States District Judge